Tyler Wirick (SBN 15964)
twirick@aldridgepite.com
Jesse A.P. Baker (SBN 13418)
jbaker@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

**ALDRIDGE PITE, LLP**
374 East 720 South
Orem, UT 84058

Attorneys for *Movant*
Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWALT, Inc. Alternative Loan Trust 2007-10cb, Mortgage Pass-Through Certificates, Series 2007-10CB

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH - SALT LAKE CITY

| In re:<br><br>MATTHEW JAMES PEASE,<br><br>Debtor.<br><br>3891 East Barton Creek Drive<br>Eagle Mountain, Utah 84005-5300<br><br>SSN/ITIN: XXX-XX-3685 | Bankruptcy Case No. 19-22565-JTM<br><br>Chapter 13<br><br>Hon. Joel T. Marker<br><br>**[FILED ELECTRONICALLY]** |
|---|---|

## MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY

Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The

Bank of New York, as Trustee for The Certificateholders of CWALT, Inc. Alternative Loan

Trust 2007-10cb, Mortgage Pass-Through Certificates, Series 2007-10CB[1] ("Movant") moves this court for an order terminating the automatic stay of 11 U.S.C. § 362(a) as to the real property located at 3891 East Barton Creek Drive, Eagle Mountain, Utah 84005-5300. This motion is supported by the points and authorities cited herein and the record currently before the court.

## I. FACTUAL AND PROCEDURAL SUMMARY[2]

1. This Motion relates to certain property located at 3891 East Barton Creek Drive, Eagle Mountain, Utah 84005-5300 (the "Property").

2. Three individuals, George Lewis Pease (hereinafter "Borrower" or "George"), Rose Mary Pease (hereinafter "Rose Mary"), and Matthew James Pease (hereinafter "Debtor") are allegedly in the chain of title of the Property or otherwise claim an interest in the property in addition to the Creditor.

3. On or about February 28, 2007, Borrower executed a promissory note in the principal sum of $270,800.00 (the "Note"), which was made payable to America's Wholesale Lender. A copy of the Note is attached hereto as **Exhibit A** and incorporated herein by reference.

4. The Note is secured by a Deed of Trust (the "Deed of Trust") encumbering the Property.[3] A copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference.

5. Movant currently holds possession of the Note, which is indorsed in blank. *See* **Exhibit A**.

---

[1] This motion shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

[2] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Movant requests that the Court take judicial notice of the documents and other records on file in the this case.

[3] The Note and Deed of Trust are collectively referred to herein as the "Loan."

6. The Deed of Trust was assigned to Movant. A copy of the Assignment of Deed of Trust is attached hereto as **Exhibit C** and incorporated herein by reference.

7. On or about April 12, 2019, an unauthorized Quitclaim Deed was executed and recorded in the Utah County Recorder's office, whereby George purported to transfer 3% interest in the Subject Property to the Debtor. A copy of the Quitclaim Deed is attached hereto as **Exhibit D** and incorporated herein by reference.

8. The amount due and owing under the Note as of April 18, 2019 was $479,097.81.

9. An Appraisal was conduced on March 13, 2019. The assessed value was $395,000.00.

10. Movant has attempted to foreclose on the Property and has had *eleven* different foreclosure sale dates set since at 2015.

11. Each sale date was cancelled due George and Mary's alternating bankruptcy filings and Debtor's instant bankruptcy filing.

12. There have been a total of twelve Chapter 13 bankruptcy petitions[4] filed since 2015 that were related to the Property, and in eleven of the cases, the debtor filed, failed to file forms or schedules or otherwise prosecute the case, and voluntarily dismissed the case or let the case dismiss on the motion of the trustee.

13. The twelfth case, the instant matter, remains open, but seems to be following the pattern of the prior eleven cases. The Debtor failed to file forms and schedules, has asked for an extension of time in which to do so, and the trustee has now filed a motion seeking to dismiss the case.

14. The dates of sale and bankruptcy filing history related to the Property is as follows:

/./../

/./../

---

[4] There were no Chapter 7 filings affecting the Property during the same time period.

|   | **Foreclosure Sale Date** | **Date Bankruptcy Filed** | **Case No.** | **Filer** | **Dismissal Date and Reason** | **Note** |
|---|---|---|---|---|---|---|
| **1.** | August 25, 2015 | August 21, 2015 | 15-27844 | Rose Mary Pease | October 30, 2015; Voluntarily dismissed | Debtor failed to file forms or schedules, even after moving the Court for additional time. |
| **2.** | January 22, 2016 | January 15, 2016 | 16-20288 | Rose Mary Pease | Voluntarily dismissed on February 19, 2016 | Debtor failed to file forms and schedules. |
| **3.** | May 16, 2016 | May 12, 2016 | 16-24112 | George Lewis Pease | Voluntarily dismissed on June 24, 2016 | Debtor failed to file forms or schedules. |
| **4.** | October 14, 2016 | October 13, 2016 | 16-29072 | Rose Mary Pease | Dismissed on motion of trustee on November 22, 2016 | Debtor failed to file forms or schedules. Motion based on failure to file creditor matrix, so no creditors received notice of 341 meeting. |
| **5.** | March 10, 2017 | March 8, 2017 | 17-21702 | George Lewis Pease | Voluntarily dismissed on April 14, 2017 | Debtor failed to file forms or schedules. |
|   |   |   |   |   |   |   |

| | | | | | | |
|---|---|---|---|---|---|---|
| **6.** | June 19, 2017 | June 15, 2017 | 17-25218 | Rose Mary Pease | Dismissed on trustee's motion on July 25, 2017 | Debtor failed to file forms or schedules. Motion based on failure to file creditor matrix, so no creditors received notice of 341 meeting. |
| **7.** | September 25, 2017 | September 22, 2017 | 17-28300 | George Lewis Pease | Voluntarily dismissed on October 25, 2017 | Debtor failed to file forms or schedules. |
| **8.** | May 21, 2018 | May 17, 2018 | 18-23592 | George Lewis Pease | Voluntarily dismissed on June 5, 2018 | Debtor failed to file forms or schedules. |
| **9.** | | July 2, 2018 | 18-24914 | Rose Mary Pease | Voluntarily dismissed on July 26, 2018 | Debtor failed to file forms or schedules. |
| **10.** | October 12, 2018 | October 11, 2018 | 18-27611 | Rose Mary Pease | Voluntarily dismissed on October 31, 2018 | Debtor failed to file forms or schedules. |
| **11.** | January 7, 2019 | January 4, 2019 | 19-20062 | George Lewis Pease | Voluntarily dismissed on February 19, 2019 | Debtor failed to file forms or schedules. |

| 12. | April 16, 2019 | April 15, 2019 | 19-22565 | Matthew James Pease | | George Lewis Pease quitclaimed a 3% interest in the property to Matthew James Pease on April 12, 2019 – three days prior to Matthew filing bankruptcy. Debtor had not filed forms or schedules as of May 14, 2019 and has asked for an extension to do so. |

## II. LEGAL ARGUMENT

**A. DEBTOR HAS NO EQUITY IN THE PROPERTY AND THE PROPERTY IS NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION**

Under 11 U.S.C. § 362(d)(2), a secured party is entitled to relief from the automatic stay of an act against property if "the debtor does not have any equity in such property; and such property is not necessary for an effective reorganization." The moving party has the burden of proof on the issue of equity and the party opposing the relief from stay has the burden of proof the remaining issues. § 362(g)(1)-(2). Thus, for the purposes of this Motion, the Creditor bears the burden of showing that the Debtor does not have equity in the Property and the Debtor has the burden of proof to show that the Property is necessary to an effective reorganization.

For purposes of Section 362(d)(2), "equity" is defined as the difference between the value of the property and all encumbrances upon it. *In re 3H River Turf Farm, LLC,* 414 B.R. 751, 754 (Bankr. D. Utah 2009) (emphasis added). Section 362(d)(2) reflects Congressional intent to allow creditors to immediately proceed against the property where the debtor has no equity and it is unnecessary to the reorganization, even where the debtor can provide adequate protection under Section 362(d)(1). *In re San Clemente Estates*, 5 B.R. 605, 610 (Bankr.S.D.Cal. 1980) (emphasis added); see also *In re White*, 216 B.R. 232, 236 (Bankr. S.D.Ohio 1997) (noting that the presence of an equity cushion in property is irrelevant to the analysis under section 362(d)(2)). Bankruptcy laws do not grant debtors the right to remain in a property which they cannot afford and for which they are not paying. *In re Kornhauser*, 184 B.R. 425, 428 (Bankr. S.D.N.Y. 1995)

Here, the equity analysis indicates a substantial amount of negative equity in the Property. The Property is valued at $395,000.00 per Appraisal conducted on March 13, 2019. The current amount due and owning on the note is $479,097.81. Thus, the equity in the property is $395,000.00 - $479,097.81= (-$84,097.81). As the Property is worth substantially less than is owed, there is no equity in the property. A copy of the Appraisal is attached hereto as **Exhibit E** and incorporated herein by reference.

Furthermore, Debtor cannot argue that his de minimis interest in the Property is necessary for an effective reorganization. While Debtor has not filed forms or scheduled, which makes this analysis difficult, it is difficult to imagine a scenario in which a junior 3% interest in a property that is nearly 40% upside down would be necessary to an effective reorganization.

**B.      MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4)**

The circumstances, history, manner, and dismissal history of the bankruptcy case filings case filings related to the Property clearly evidence a scheme to hinder, delay, or defraud the Creditor and constitute grounds for relief under 11 U.S.C. § 362(d)(4). Section 362(d) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or[5] defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4). Congress added 11 U.S.C. § 362(d)(4)(B) to the Bankruptcy Code in 2005 in order to: "…reduce abusive filings." *In re: Tejal Inv. LLC*, 2012 Bankr. LEXIS 5760 at *13 (Bankr. D. Utah 2012)(*quoting* H.R. Rep. No. 109- 31(I) at 70.)) In addition, 11 U.S.C. § 362(d)(4)(B) allows a court to grant relief to a creditor to prevent the automatic stay from taking effect against real property for a period of two years where the bankruptcy court finds that the filing of the debtor's latest bankruptcy petition was part of scheme to hinder, delay or defraud the creditor involving the filing the filing of multiple bankruptcies affecting the property.

The Code sets forth a three-prong test that must be met in order to grant in rem relief under § 362(d)(4). As Judge Thurman stated in *Tejal*,

---

[5] Pursuant to the Bankruptcy Technical Corrections Act of 2010, Section 362(d)(4) was revised by striking "hinder, and" and inserting "hinder, or."

> Before a court will lift the automatic stay, it must find that (1) the debtor's bankruptcy filing was part of a scheme; (2) the scheme was intended to delay, hinder or defraud the creditor; and (3) the scheme involved either (a) the transfer of some interest in the real property without obtaining approval from the court or the secured creditor, or (b) multiple bankruptcy filings affecting the real property.

*In re Tejal*, at *15 (Bankr. D. Utah Dec. 12, 2012). A prima facie case must be made as to each element. *See Id*.

### i. DEBTOR'S BANKRUPTCY IS PART OF A SCHEME TO HINDER, DELAY OR DEFRAUD THE CREDITOR

The Bankruptcy Code does not provide the definition of a scheme, but citing 9th Circuit authority, the Utah Bankruptcy Courts have defined a scheme as "plan or design or an 'artful plot;" *In re Tejal*, at *15 (*citing In re Smith,* 395 B.R. 711, 719 (Bankr. D. Kan. 2008)(adopting the definition of scheme in *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006.)) Here, a scheme is found in the timing of the filings, the alternating debtors who filed, the unauthorized transfer to the instant Debtor, and the Debtor's subsequent filing.

Indeed, it is no coincidence that eleven of the twelve bankruptcy petitions were filed within a few days of a foreclosure sale date, thus invoking the automatic stay and/or co-debtor stay, which resulted in the cancellation of the foreclosure sale date. The modus operandi for the filers included filing on the petition and nothing else, and then voluntarily dismissing the case – usually after the trustee filed a motion to dismiss for failure to file a creditor matrix so the 341 meeting could be noticed to creditors.

/./././
/././
/././
/././
/././

It is also no coincidence that George and Rose Mary took turns filing each case individually and not as a married couple. Each of the filings was carefully planned as to the person filing and the date of filing in order to avoid the repeat filer stay limitations in 11 U.S.C. § 362(c)(4). If George had two bankruptcies pending within a one year period so the stay would not have arisen on the third filing, then Rose Mary would file, or vice versa. This scheme worked well from 2015 until about 2018, when the Creditor started setting foreclosure dates closer together.

By April 16, 2019, the date of the most recently scheduled foreclosure sale, George and Rose Mary were both subject to 11 USC § 362(c)(4), so if either filed, there would be no automatic stay. Thus, in order to realize the protections of the automatic stay, on April 12, 2019, George quitclaimed an undivided 3% interest in the Property to the Debtor, and the Debtor filed the instant bankruptcy. This step as taken in an attempt to invoke the stay and again delay the foreclosure sale, and hinder the Creditor from exercising its state law rights.

### ii. THE SCHEME INVOLVED BOTH THE FILING OF REPETITIVE (TWELVE) BANKRUPTCY FILINGS AND AN UNAUTHORIZED TRANSFER OF THE PROPERTY

The second prong of the in rem stay relief analysis has been met by the repetitive bankruptcy filings and the unauthorized transfer, which were done in furtherance of the scheme. In the absence of extraordinary circumstances, successive or serial filings for the purposes of re-imposing the automatic stay, particularly when the debtor's purpose is to delay a scheduled foreclosure, should not be viewed with favor by the court. *In re McKissey*, 103 B.R. 189, 192 (Bankr. N.D. IL 1989) (citing *In re Russo*, 94 B.R. 127, 129 (Bankr. N.D. IL 1988).

The aforementioned multiple bankruptcy filings have prevented Movant from lawfully exercising its state law remedies with regard to the Real Property. Additionally, Movant continues to incur significant legal expenses while the Borrower enjoys use and possession of the Real Property, without making payment.

George's unauthorized quitclaim to Debtor further demonstrates the intent to delay or hinder the Creditor. Indeed, Debtor's case appears to be progressing on the same patters as the prior eleven cases. Debtor filed without forms or schedules, asked for an extension, still has not filed forms or schedules, and a trustee's motion to dismiss is now pending. The only thing left is for Debtor to file a voluntary dismissal and the pattern will be complete. Creditor will again be delayed and required to set another foreclosure sale, while George, Rose Mary, and Debtor continue to enjoy the property to the detriment of the Creditor.

### III.     CONCLUSION

The twelve bankruptcy filings since 2015 and the unauthorized transfer of the Property to the Debtor evidence that the instant bankruptcy was part of a plan or scheme to delay, hinder or defraud the Creditor and prevent the creditor from exercising its state law remedies to the Property. Accordingly, the Creditor is entitled to in rem relief from the automatic stay under 11 U.S.C. § 362(d)(4).

**WHEREFORE**, Movant respectfully prays for an Order of this court:

1.     Terminating the automatic stay of 11 U.S.C. 362(b)(4) to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property;

2.     This Order shall be binding and effective in any other case under the Bankruptcy Code purporting to affect the subject real property filed not later than two years after the date of entry, upon recording a copy of the order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law, except that a debtor in subsequent case may move for relief from the order based upon good cause shown after notice and hearing;

3.     Permitting Movant to offer and provide Debtor's with information re: a potential forbearance agreement, short sale, deed in lieu, loan modification, refinance agreement, or other

loan workout/loss mitigation agreement, and to enter into such agreement with Debtor without further order of the court;

    4.    Permitting Movant to recover its reasonable attorneys' fees and costs incurred in prosecuting the instant motion by adding these amounts to the outstanding balance due under the Note, as allowed under applicable non-bankruptcy law; and

    5.    Granting Movant such other and further relief as the court deems just and proper.

Respectfully submitted,

**ALDRIDGE PITE, LLP**

Dated: May 22, 2019

_____
TYLER WIRICK
Attorney for *Movant* Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York, as Trustee for The Certificateholders of CWALT, Inc. Alternative Loan Trust 2007-10cb, Mortgage Pass-Through Certificates, Series 2007-10CB

**MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY**

# CERTIFICATE OF MAILING

I hereby certify that on <u>May 22, 2019</u>, I mailed a copy of the foregoing Motion and all exhibits to the following:

**DEBTOR**
Matthew James Pease
3891 East Barton Creek Drive
Eagle Mountain, UT 84005

**DEBTORS' ATTORNEY**
**(via electronic notice)**
Knute Rife
Rife Law Firm
P.O. Box 2941
Salt Lake City, UT 84110
KARife@RifeLegal.com

**TRUSTEE**
**(via electronic notice)**
Lon Jenkins tr
405 South Main Street
Suite 600
Salt Lake City, UT 84111
ecfmail@ch13ut.org

**U. S. TRUSTEE**
**(via electronic notice)**
United States Trustee
Washington Federal Bank Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
USTPRegion19.SK.ECF@usdoj.gov

**BORROWER**
George Lewis Pease
3891 East Barton Creek Dr
Eagle Mountain, UT 84005-5300


Dated: May 22, 2019                    /s/ *Andrew J. Ries*
                                       ANDREW J. RIES